UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

OLYMPIC VIEW WATER AND SEWER DISTRICT,

                    Plaintiff,

v.

EDMONDS SCHOOL DISTRICT NO. 15,

                    Defendant.

Case No. 2:25-cv-1409

COMPLAINT

**JURY DEMAND**

## I.      INTRODUCTION

1.      This action is a citizen suit under the Safe Drinking Water Act ("SDWA" or "Act") to enforce the SDWA's prohibition on the underground injection of contaminants that endanger drinking water sources. See 42 U.S.C. § 300j-8. The SDWA prohibits (1) the underground injection of any contaminant in violation of or without a permit or rule-authorization, (2) underground injection that endangers drinking water sources, and (3) the failure to properly inspect, monitor, maintain records, and report to the applicable state agency about the underground injection. 42 U.S.C. § 300h(b)(1).

2.      The SDWA requires that where the Environmental Protection Agency ("EPA") has designated a particular contaminant under its primary drinking water regulations for public

COMPLAINT - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

water systems, the EPA must establish a maximum contaminant level ("MCL") for that contaminant. 42 U.S.C. § 300f(1)(C)(i). The EPA has designated certain Per- and Polyfluoroalkyl Substances ("PFAS") as contaminants under the SDWA and established MCLs for several PFAS contaminants.[1]

3.      The SDWA authorizes states to take primary responsibility for the management and protection of underground sources of drinking water. State implementation of the SDWA is subject to approval by the Environmental Protection Agency ("EPA"). 42 U.S.C. § 300h-1. Washington's Underground Injection Control ("UIC") program has been approved by the EPA, thereby granting the Department of Ecology ("Ecology") the authority to implement the SDWA. 49 F.R. 31875; WAC 173-218-020(2). A violation of Washington's UIC program is a violation of the SDWA for discharging contaminants in violation of a state-issued permit. *Id.*

4.      Defendant Edmonds School District No. 15 ("Defendant ESD") owns and operates Madrona K-8 School ("Madrona K-8"), which is located at 9300 236th Street SW in Edmonds, Washington 98020. Madrona K-8 has 16 Underground Injection Control Wells ("UIC Wells") rule-authorized by Ecology.

5.      Plaintiff Olympic View Water and Sewer District ("OVWSD") alleges that Defendant ESD is violating the SDWA each and every day it discharges PFAS-contaminated stormwater at concentrations that may violate the groundwater quality standards at Madrona K-8 via the UIC Wells to underground sources of drinking water.

6.      PFAS chemicals are water-soluble and highly mobile and can easily

---

[1] Specifically, the PFAS compounds with applicable MCLs are PFOA, PFOS, PFNA, PFHxS, and HFPO-DA.

COMPLAINT - 2

contaminate groundwater once deposited in soil or discharged in UIC wells. PFAS chemicals are linked to serious health concerns, including developmental effects in children, impacts on the immune system, and increased risks of certain cancers. Because children are constantly developing, they may be more sensitive to the harmful effects of chemicals such as PFAS. Research is still underway to fully understand all of the adverse health effects associated even with low levels of PFAS exposure over long periods of time, especially in children.

7.     OVWSD seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of costs, including attorneys' and expert witness fees, for Defendant's repeated and ongoing violations of the SDWA as implemented by Washington's UIC program.

## II.     PARTIES

8.     OVWSD is a Special Purpose District formed in approximately 1937 to provide water to Unincorporated Snohomish County. OVWSD now consists of portions of the City of Edmonds, the Town of Woodway, and Unincorporated Snohomish County. OVWSD is a public utility authorized under Title 57 RCW that operates under a three-member Board of Commissioners elected at large by District residents. OVWSD currently has about 15,000 water service customers, including the Madrona K-8 School and, therefore, constitutes a public water system under the SDWA. See 42 U.S.C.A. § 300f(4)(A). OVWSD's principal place of business is in unincorporated Snohomish County, Washington. OVWSD is a "person" under 42 U.S.C. § 300j-8(a)(1).

9.     The Madrona K-8 School is located at 9300 236th Street SW in Edmonds, Washington 98020. The Madrona K-8 School is located within the mapped buffer zone of the Critical Aquifer Recharge Area for the Deer Creek Group A municipal water supply source. The Deer Creek Group A Municipal water supply source consists of the Deer Creek Drinking

COMPLAINT - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

Water Aquifer and Deer Creek. The Deer Creek Drinking Water Aquifer supplies water to Deer Creek. OVWSD operates a Municipal Drinking Water Treatment Plant that withdraws water from Deer Creek. The Deer Creek Treatment Plant produces approximately 600,000 gallons of water each day of operation, which provides approximately 40% of OVWSD's annual drinking water supply. The volume of water treated contributes to the overall water supply availability in the region.

10.    OVWSD has standing to commence and maintain this action as a public water system that relies upon water from the Deer Creek Drinking Water Aquifer to supply or can be reasonably expected to supply drinking water to the public water system and its customers. OVWSD is harmed by the threat that injection of PFAS-contaminated stormwater may violate groundwater quality standards, exceed MCLs at OVWSD's Deer Creek Treatment Plant, and/or adversely affect the health of persons. Costs to treat PFAS-contaminated drinking water at the Deer Creek Treatment Plant may be millions of dollars, if such treatment is even feasible. OVWSD is then required to assess its customers the cost of such treatment. If treatment is not feasible, then OVWSD cannot continue to rely upon the Deer Creek Drinking Water Aquifer as a source for its water supply.

11.    Defendant Edmonds School District No. 15, Snohomish County, State of Washington is a municipal corporation organized pursuant to Title 28A of the Revised Code of Washington ("RCW"). The Defendant owns and operates Madrona K-8 and is the registered owner and operator of the 16 rule-authorized UIC Wells at Madrona K-8. The Defendant's principal place of business is located at 20420 68th Avenue W, Lynnwood, Washington 98036. The Defendant is a "person" under 42 U.S.C. § 300j-8(a)(1).

COMPLAINT - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

### III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 42 U.S.C. § 300j-8 (SDWA citizen suit provision) and 28 U.S.C. § 1331 (federal question). The requested relief is proper under 42 U.S.C. § 300j-8.

13.    OVWSD has satisfied the jurisdictional requirements for bringing this suit. In accordance with 40 C.F.R. § 135.11(a)(1), by certified letter dated and postmarked May 20, 2025, OVWSD notified Defendant regarding the SDWA violations and OVWSD's intent to sue for those violations ("Notice Letter"). OVWSD sent a supplemental letter, which identified the specific UIC Wells at issue, by certified mail, dated and postmarked May 21, 2025 ("Supplemental Notice Letter"). OVWSD also notified the Administrator of the EPA, the Administrator of EPA Region 10, the Attorney General of the State of Washington, and the Director of Ecology of its intent to sue Defendant by mailing a copy of the Notice Letter and Supplemental Notice Letter to those officials on May 20, 2025 and May 21, 2025, respectively. A copy of the Notice Letter and Supplemental Notice Letter are attached to this complaint as Exhibits 1 and 2, and the allegations therein are hereby incorporated by reference.

14.    More than 60 days have passed since OVWSD mailed the Notice Letter and Supplemental Notice Letter, and the violations complained of are continuing or reasonably likely to recur.

15.    At the time of the filing of this Complaint, neither EPA nor Ecology has commenced an action constituting diligent prosecution to redress the violations alleged herein.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claim occurred in this judicial district, in Snohomish County, Washington.

COMPLAINT - 5

17.     Upon filing, a copy of this Complaint will be served on the Administrator of the EPA, the Administrator of EPA Region 10, the Attorney General of the State of Washington, and the Director of Ecology.

## IV.     LEGAL BACKGROUND

18.     Congress enacted the SDWA in 1974 to protect the quality of drinking water in the United States. The SDWA was enacted to ensure that public water systems meet minimum national and state-specific standards for the protection of the public health by regulating contaminants in drinking water. 42 U.S.C.A. §§ 300f *et seq.*

19.     The SDWA defines a "contaminant" as "any physical, chemical, biological, or radiological substance or matter in water." 42 U.S.C.A. § 300f(6).

20.     The SDWA defines a "public water system" as "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C.A. § 300f(4)(A).

21.     The SDWA requires that where the EPA has designated a particular contaminant under its primary drinking water regulations for public water systems, the EPA must establish an MCL for that contaminant. 42 U.S.C.A. § 300f(1)(C)(i). The EPA has designated PFAS as contaminants under the SDWA and established MCLs for several PFAS chemicals.

22.     The SDWA prohibits (1) the underground injection of any contaminant in violation of or without a permit or rule-authorization, (2) underground injection that endangers drinking water sources, and (3) the failure to properly inspect, monitor, maintain records, and report to the applicable state agency about the underground injection. 42 U.S.C. § 300h(b)(1).

COMPLAINT - 6

23.     The SDWA authorizes states to take primary responsibility for the management and protection of underground sources of drinking water. State implementation of the SDWA is subject to approval by the EPA. 42 U.S.C. § 300h-1. Washington's UIC program has been approved by the EPA, thereby granting Ecology the authority to implement the SDWA. 49 F.R. 31875; WAC 173-218-020(2).

24.     The SDWA prohibits the underground injection of contaminants in violation of a permit or rule authorization. Because Washington has delegated authority to implement the UIC program, any violation of this program—such as discharging contaminants in violation of a state-issued permit or rule-authorization—constitutes a violation of the SDWA *Id.*

25.     The UIC program permits the issuance of Class V UIC Wells for the injection of stormwater to groundwater. 40 CFR 144.1(g). A Class V UIC Well must be either rule-authorized or receive a waste discharge permit from Ecology. 40 CFR 144.1(g). For rule authorization, the applicant for a Class V Well must register the well with Ecology. WAC 173-218-060(5).

26.     To be approved, the well must meet the "nonendangerment standard." WAC 173-218-030. Washington's nonendangerment standard means "[t]o prevent the movement of fluid containing any contaminant into ground water if the contaminant [1] may cause a violation of the Water Quality Standards for groundwaters of the State of Washington, chapter 173-200 WAC, or [2] may cause health concerns." WAC 173-218-030. A rule-authorized UIC well must continue to meet the nonendangerment standard during its operation. Otherwise, "[r]ule authorization can be rescinded if a UIC well no longer meets the nonendangerment standard of this chapter." WAC 173-218-070.

COMPLAINT - 7

27.    To meet the nonendangerment standard, the owner or operator of the UIC well must further (1) comply with RCW 90.48.010, 90.48.080, 90.48.160, 90.48.162, and 90.48.455; (2) comply with chapter 173-200 WAC water quality standards for groundwaters of the state of Washington; and (3) operate and maintain the well in a manner that protects groundwater quality as described in 40 C.F.R. 144.12(a). WAC 173-218-080(1)-(3). Absent a specific groundwater quality standard, the MCL adopted by EPA is applied as the standard for all groundwaters of the state. WAC 173-200-040(2).

28.    The nonendangerment standard does not require an actual groundwater quality violation to occur. Rather, the standard merely prohibits any discharge of a contaminant to groundwaters of the state that "may cause a violation" of groundwater quality standards. WAC 173-218-030. The use of the word "may" indicates that a threat to groundwater quality is sufficient to violate the nonendangerment standard. *See e.g. Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 824 F.2d 1258, 1276 (5th Cir. 1987). The nonendangerment standard protects groundwater quality by "preventing ground water contamination[.]" WAC 173- 218-010(1). Prevention, rather than remediation, is necessary to ensure nonendangerment because, as noted by the Fifth Circuit in *Nat. Res. Def. Council*, it "cannot be done after the fact." *Id.*

## V.    FACTS

29.    The Madrona School was originally built in 1963. In 2014, voters approved a capital construction bond to fund the construction and replace the aging facility with a new K-8 school (the "Madrona K-8 School Replacement Project"). In July 2016, the Defendant ESD's School Board approved the project. Construction was completed around late 2018. Reconstructed on the original school site, the new Madrona K-8 spans approximately 80,000 square feet, consists of six buildings, and includes new parking and bus loop facilities external

COMPLAINT - 8

to the school.

30.     Madrona K-8 School is located within the mapped buffer zone of the Critical Aquifer Recharge Area for the Deer Creek Group A municipal water supply source. The Deer Creek Group A Municipal water supply source consists of the Deer Creek Drinking Water Aquifer and Deer Creek. The Deer Creek aquifer supplies water to Deer Creek. OVWSD operates a Municipal Drinking Water Treatment Plant that withdraws water from Deer Creek. The Deer Creek Treatment Plant produces approximately 600,000 gallons of water each day of operation ,which provides approximately 40% of OVWSD's annual drinking water supply. The volume of water treated contributes to the overall water supply availability in the region.

31.     The Madrona K-8 School Replacement Project included the installation of a new stormwater management system, which collects water at catch basins and then conveys this stormwater to bioretention planters, an oil water separator, or one of the 16 UIC Wells located at the site.

32.     The 16 UIC Wells were rule-authorized collectively by Ecology under Registration No. 33981 on or about 2019. The UIC Wells are numbered as follows: SW 100, SW 101, SW 102 SW 103, SW 104, SW 200, SW 201, SW 202, SW 203, SW 204, SW 300, SW 301, SW 302, SW 400, SW 401, and SW 402.

33.     The UIC Wells inject stormwater into the vadose zone of the unconfined Qva Deer Creek Drinking Water Aquifer. The unconfined Qva Deer Creek Drinking Water Aquifer is the OVWSD's drinking water source. The UIC Wells are within the buffer zone to the Critical Aquifer Recharge Area, where groundwater will reach the Deer Creek Municipal Drinking Water Treatment Plant in approximately 13 years. The UIC Wells are subject to the

COMPLAINT - 9

SDWA as implemented by Washington's Underground Injection Control Program in WAC 173-218 *et seq*.

34.    OVWSD vehemently opposed Defendant ESD's decision to install UIC Wells because of the threat posed by discharging stormwater directly into the Deer Creek Drinking Water Aquifer. UIC Wells provide a complete pathway between contaminated media (stormwater) and a drinking water source (the unconfined Qva Deer Creek Drinking Water Aquifer). The Defendant ESD installed the UIC Wells despite OVWSD's objection.

35.    OVWSD's concerns were well-founded. In 2022, OVWSD collected stormwater samples from the stormwater conveyance system that discharges to the UIC Wells at the Madrona K-8 School. Defendant ESD conducted additional stormwater sampling in 2023 and 2024. Each of these sample results confirmed the presence of PFAS chemicals at various concentrations, including concentrations that exceed the MCLs and SALs, and validated OVWSD's original concerns about the risk of pollutants entering drinking water when the UIC Wells were first installed.

36.    In 2025, Defendant ESD tested soil from the bioretention planters located in the bus loop and parking lot at Madrona K-8 School. The bioretention planters collect stormwater from large portions of the campus before directing it to the UIC Wells. The sampling revealed PFAS concentrations in the bioretention planters that significantly exceeded both the MCLs and SALs. Defendant ESD subsequently sampled waste soil previously removed from the bioretention planter and piled behind the Madrona K-8 School exposed to stormwater. These samples also showed PFAS levels well above the MCLs and SALs, likely resulting in leaching of stormwater contaminated with PFAS chemicals that is ultimately

COMPLAINT - 10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

conveyed to a UIC Well.

37.    OVWSD believes the UIC Wells began operating when the Madrona K-8 School Replacement Project was completed in 2019. Therefore, PFAS chemicals likely have been entering the UIC Wells for approximately eight years.

38.    Publicly available precipitation data shows that stormwater, likely with PFAS concentrations, discharged through the UIC Wells for at least 406 days since 2020.[2] Moreover, since the groundwater will reach Deer Creek in approximately 13 years after discharge in the UIC Wells, PFAS chemicals in groundwater from the Madrona K-8 School are likely approaching Deer Creek and the Deer Creek Municipal Drinking Water Treatment Plant.

39.    At the time of rule authorization, Defendant ESD did not provide best management practices ("BMPs") used to protect groundwater quality from PFAS. There is no BMP or treatment in place to protect the Deer Creek Group A municipal water supply source from PFAS in stormwater in the UIC Wells at Madrona K-8 School. Defendant ESD's continuous discharge of PFAS-contaminated stormwater in the UIC Wells endangers OVWSD's customers, which includes the students and staff at the Madrona K-8 School.

40.    On August 16, 2024, Ecology sent a letter of concern to Defendant ESD, identifying that PFAS concentrations entering the UIC Wells may violate the nonendangerment standard. Ecology requested that Defendant ESD conduct some limited

---

[2] Lake Forest Park Precipitation Data, National Centers for Environmental Information operated by the National Environmental Satellite, Data, and Information Service, an Office of the National Oceanic Atmospheric Administration (NOAA). See spreadsheet of precipitation data attached to Exhibit 1 as Exhibit A. The data is limited to only those days where there was at least 0.1 inches of rain observed at the collection location.

COMPLAINT - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

monitoring to investigate the source of PFAS entering the UIC Wells. In response, Defendant ESD prepared and conducted a limited sampling plan. However, the sampling plan was not adequate to definitively identify the source of PFAS, and the sampling outlined in the plan remains incomplete.

41.    On March 25, 2025, Ecology requested Defendant ESD to replace the bioretention planter media located in the bus loop area of the Madrona K-8 and conduct additional stormwater sampling for PFAS ("First Proposed Plan"). However, Ecology did not request Defendant ESD to abate further discharge of PFAS-containing stormwater into the UIC Wells, nor did Ecology rescind Defendant ESD's rule authorization.

42.    On April 11, 2025, Ecology modified the First Proposed Plan to provide for additional sampling in the bioretention planter and additional stormwater sampling for PFAS. However, Ecology still did not request that Defendant ESD abate further discharges of PFAS-containing stormwater into the UIC Wells, nor rescind Defendant ESD's rule authorization.

43.    On April 23, 2025, Defendant commenced a lawsuit in Snohomish County Superior Court against Forma Construction Company. Defendant's complaint in the lawsuit asserts that "[t]he testing showed PFAS concentrations exceeding the federal Maximum Contaminant Level ("MCL") and the Washington State Action Level ("SAL") at multiple locations at the [Madrona K-8], including in stormwater runoff from the bus loop, in soil located in the bus loop bioretention planters, and in the soil stockpile." *Edmonds School District No. 15 v. Forma Construction Company*, Case No. 25-2-03832-31, ¶ 22 (Snohomish County Superior Court, April 25, 2025).

44.    On May 12, 2025, Ecology requested that the Defendant ESD replace the

COMPLAINT - 12

bioretention planter media located in the parking lot area of the Madrona K-8 and conduct additional stormwater sampling for PFAS ("Second Proposed Plan"). As described earlier, soil sampling from the bioretention planters located in the bus loop and parking lot revealed PFAS concentrations above both MCLs and SALs. Again, Ecology did not request Defendant ESD to abate further discharges of PFAS-containing stormwater into the UIC Wells nor rescind Defendant ESD's rule authorization. Despite OVWSD's continuous efforts to compel ESD and Ecology to address this risk, the discharge of PFAS-contaminated stormwater into the UIC Wells from an unidentified source at the Madrona K-8 School remains wholly unabated.

45.     The First Proposed Plan and Second Proposed Plan fail to comply with Washington's UIC well program and the SDWA because it does not prevent PFAS-contaminated stormwater from entering the UIC Wells. The plans lack sufficient data on the source, fate, transport, and exposure pathways of PFAS at the Madrona K-8 School, making it impossible to make technically defensible decisions regarding its effectiveness. The plans also fail to include adequate stormwater and groundwater confirmation sampling to verify compliance with the SDWA and the UIC well program after the work implementing the plans is complete. As a result, it is reasonably likely that Defendant ESD will continue to violate the nonendangerment standard even if it completes the plans requested by Ecology.

46.     As of the date of filing this complaint, Defendant ESD has neither completed the work requested by Ecology in the First and Second Proposed Plans nor conducted confirmation stormwater sampling to confirm its effectiveness. Moreover, Defendant asserted in writing that it will not stop using the UIC Wells for stormwater management even if PFAS-contaminated stormwater continues to be present at the Madrona K-8 School.

COMPLAINT - 13

47.    As of the date of filing this complaint, Defendant ESD's compliance with the SDWA or the UIC program has not been verified. As a result, OVWSD has a good faith belief, after reasonable inquiry, that violations of the SDWA as implemented by Washington's UIC program are ongoing and/or reasonably likely to recur, as Defendant ESD continues to discharge PFAS-contaminated stormwater into the UIC Wells at the Madrona K-8 School.

48.    Any and all additional violations of the SDWA and the UIC program by Defendant ESD that occur or are discovered after those described in the Notice Letter or Supplemental Notice Letter, but before a final decision in this action, are continuing violations subject to this Complaint.

49.    Defendant ESD is in ongoing violation of the SDWA and the UIC program. Absent the imposition of appropriate civil penalties and the issuance of injunctive or other relief, Defendant ESD will continue these violations, further endangering the Deer Creek Drinking Water Aquifer, the Deer Creek Municipal Drinking Water Treatment Plant, OVWSD, and the health of its customers.

## VI.    CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**Violation of the Safe Drinking Water Act – Nonendangerment Standard**
**42 U.S.C. § 300h(b)(1)(B) and WAC 173-218-080**

50.    OVWSD realleges and incorporates by reference the Paragraphs 1 through 50.

51.    Defendant ESD has violated and continues to violate the SDWA by operating UIC wells at the Madrona K-8 School that discharge stormwater containing PFAS chemicals at concentrations that exceed applicable MCLs and SALs. These PFAS contaminants are discharged through the UIC wells into the Deer Creek Drinking Water Aquifer at levels and for a duration that may cause violations of groundwater quality standards. The affected

COMPLAINT - 14

groundwater lies within the buffer zone of OVWSD's Deer Creek Treatment Plant, which supplies drinking water to its customers. Accordingly, Defendant ESD's discharge of PFAS-contaminated stormwater violates and will continue to violate the nonendangerment standard.

52.     Defendant ESD's violations of the nonendangerment standard as described herein, the Notice Letter, and the Supplemental Notice Letter, which constitute a violation of the rule-authorization for the UIC Wells, are violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

53.     Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

## SECOND CLAIM FOR RELIEF
### Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Implement All Known and Reasonable Methods
### 42 U.S.C. § 300h(b)(1)(B); WAC 173-218-080(1); RCW 90.48.010

54.     OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

55.     Pursuant to WAC 173-218-080(1) and RCW 90.48.010, Defendant ESD is required to implement all known available and reasonable methods to prevent and control pollution of the waters of the state of Washington.

56.     Defendant ESD's failure to implement all known available and reasonable methods to prevent and control the discharge of PFAS chemicals to the Deer Creek Drinking Water Aquifer violates and continues to violate the nonendangerment standard.

57.     Defendant ESD's violations of the nonendangerment standard and the rule-

COMPLAINT - 15

authorization for the UIC Wells as described herein, the Notice Letter, and Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

58.    Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

### THIRD CLAIM FOR RELIEF
**Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Prevent the Discharge of Pollutants to Waters of the State**
**42 U.S.C. § 300h(b)(1)(B); WAC 173-218-080(1); RCW 90.48.080**

59.    OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

60.    Pursuant to WAC 173-218-080(1) and RCW 90.48.080, Defendant ESD is required to prevent the discharge of organic or inorganic matter that causes or tends to cause pollution of waters of the State of Washington.

61.    PFAS chemicals are an organic or inorganic matter that cause or tend to cause pollution of the waters of the State of Washington. The Deer Creek Drinking Water Aquifer is a water of the State of Washington. The PFAS chemicals discharged by the UIC Wells to the Deer Creek Aquifer are at concentrations and for a duration that may cause a violation of state water quality standards in groundwater.

62.    Defendant ESD's failure to prevent the discharge of PFAS chemicals to the Deer Creek Aquifer violates and continues to violate the nonendangerment standard.

63.    Defendant ESD's violations of the nonendangerment standard and the rule-

COMPLAINT - 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

authorization for the UIC Wells as described herein, the Notice Letter, and Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

64.    Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

## FOURTH CLAIM FOR RELIEF
**Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Implement All Known, Available, and Reasonable Methods of Prevention, Control, and Treatment**

65.    42 U.S.C. § 300h(b)(1)(B) and WAC 173-218-080(2)

66.    OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

67.    Pursuant to WAC 173-218-080(2), Defendant ESD is required to comply with groundwater quality standards by implementing BMPs at the Madrona K-8 School that will fulfill all known, available, and reasonable methods of prevention, control, and treatment ("AKART").

68.    Defendant ESD's failure to implement AKART to ensure compliance with groundwater quality standards of the state violates and continues to violate the nonendangerment standard.

69.    Defendant ESD's violations of the nonendangerment standard and the rule-authorization for the UIC Wells as described herein, the Notice Letter, and Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as

COMPLAINT - 17

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

70.    Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

## FIFTH CLAIM FOR RELIEF
**Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Operate and Maintain to Protect Groundwater Quality and Meet Primary Drinking Water Standards**
**42 U.S.C. § 300h(b)(1)(B); 40 C.F.R. 144.12(a); WAC 173-218-080(3)**

71.    OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

72.    Pursuant to 40 C.F.R. 144.12(a) and WAC 173-218-080(3), Defendant ESD is required to operate and maintain its UIC Wells in a manner that protects groundwater quality and meets primary drinking water standards.

73.    Defendant ESD has failed and continues to fail to operate and maintain its UIC Wells as required by 40 C.F.R. 144.12(a) because it discharges PFAS-contaminated stormwater in a manner that may cause a violation of primary drinking water standards under 40 C.F.R. Part 142 or may otherwise adversely affect the health of persons.

74.    Defendant ESD's violations of the nonendangerment standard and rule-authorization for the UIC Wells as described herein, the Notice Letter, and Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

75.    Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

### SIXTH CLAIM FOR RELIEF
**Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Implement Best Management Practices**
**42 U.S.C. § 300h(b)(1)(A); WAC 173-218-070**

76.    OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

77.    Pursuant to 42 U.S.C. § 300h(b)(1)(A); WAC 173-218-070, Defendant ESD is required to maintain BMPs to protect groundwater quality from PFAS chemicals to be rule-authorized by Chapter 173-218 *et seq.* WAC.

*78.*    Defendant ESD's registration for rule authorization lacks BMPs that protect groundwater quality because no such BMPs for PFAS exist. As a result of Defendant ESD's failure to identify and implement BMPs that safeguard groundwater, its UIC Wells at the Madrona K-8 School cannot be rule-authorized under Chapter 173-218 *et seq.* WAC.

79.    Defendant ESD's UIC Wells violate and continue to violate 42 U.S.C. § 300h(b)(1)(A) and WAC 173-218-070 by discharging PFAS-containing stormwater to the Deer Creek Drinking Water Aquifer without a permit or rule authorization.

80.    Defendant ESD's violations of the nonendangerment standard and the rule-authorization for the UIC Wells as described herein the Notice Letter, and Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

81.    Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of

COMPLAINT - 19

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

**SEVENTH CLAIM FOR RELIEF**
**Violation of the Safe Drinking Water Act – Nonendangerment Standard: Failure to Comply with the Demonstrative Approach**
**42 U.S.C. § 300h(b)(1)(A); WAC 173-218-090**

82.     OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

83.     The owner or operator of UIC Wells must demonstrate compliance with the nonendangerment standard before placing a new well into service. WAC 173-218-090(1)(c). Based on site-specific data at the Madrona K-8 School, Defendant ESD is not presumed to meet the nonendangerment standard and, therefore, must comply with the demonstrative approach to be rule-authorized. WAC 173-218-090(1)(c)(ii)(D).

84.     Defendant ESD failed to comply with the demonstrative approach to rule authorization prior to placing the UIC Wells into service. By continuing to discharge PFAS-contaminated stormwater into the UIC Wells without satisfying the requirements for rule authorization, Defendant ESD is violating and continues to violate 42 U.S.C. § 300h(b)(1)(A) and WAC 173-218-090 by discharging PFAS-contaminated stormwater to the Deer Creek Drinking Water Aquifer without rule authorization or a permit.

85.     Defendant ESD's violations of the nonendangerment standard and the rule-authorization for the UIC Wells as described herein, the Notice Letter, and the Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

86.     Upon information and belief, the violations committed by Defendant ESD are

COMPLAINT - 20

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

## EIGHTH CLAIM FOR RELIEF
### Violation of the Safe Drinking Water Act – Nonendangerment Standard: Injection of Hazardous Substances
### 42 U.S.C. § 300h(b)(1)(A); RCW 70A.305.020(13); WAC 173-218-040(5)(b)(v)

87.     OVWSD realleges and incorporates by reference Paragraphs 1 through 50.

88.     PFAS chemicals, including PFOS, PFOA, and PFNA, are designated as hazardous substances under 42 U.S.C. § 9601(14) and RCW 70A.305.020(13).

89.     Washington law prohibits Class V UIC wells from discharging hazardous substances. WAC 173-218-040(5)(b)(v).

90.     Defendant ESD's UIC Wells violate and continue to violate 42 U.S.C. § 300h(b)(1)(A) and WAC 173-218-040 by discharging PFAS-contaminated stormwater to the Deer Creek Drinking Water Aquifer.

91.     Defendant ESD's violations as described herein, the Notice Letter, and the Supplemental Notice Letter constitute violations of "any requirement prescribed by . . . [the SDWA]" as implemented by Washington's UIC program. 42 U.S.C. § 300j-8(a)(1).

92.     Upon information and belief, the violations committed by Defendant ESD are continuing or are reasonably likely to continue to recur. Any and all additional violations of the rule-authorization that occur after the date of the Notice Letter and Supplemental Notice Letter, but before a final decision in this action, should be considered continuing violations subject to this Complaint.

COMPLAINT - 21

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.      Declare that Defendant ESD has violated and continues to be in violation of the Safe Drinking Water Act, as alleged herein;

2.      Issue injunctive relief directing Defendant ESD to comply with the SDWA as implemented by Washington's UIC program;

3.      Issue injunctive relief directing Defendant ESD to stop all further discharges to the UIC Wells, until Defendant ESD has demonstrated compliance with the SDWA and Washington UIC program;

4.      Order Defendant ESD to pay civil penalties up to the maximum authorized by the SDWA per day of such violation, as authorized by 42 U.S.C. § 300h-2(b)(1) and 42 U.S.C. § 300j-8;

5.      Award Plaintiff its litigation expenses, including costs and reasonable attorneys' and expert witness fees, as authorized by 42 U.S.C. § 300j-8(d); and

6.      Award such other relief as this Court deems just and appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT - 22

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone 206-622-1711

Dated this 25th day of July, 2025.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:    /s/ Ryen L. Godwin
       Ryen L. Godwin, WSBA #40806
       Email: rgodwin@schwabe.com

By:    /s/ David M. Hori
       David M. Hori, WSBA #56796
       Email: dhori@schwabe.com

By:    /s/ Connie Sue Martin
       Connie Sue Martin, WSBA #26525
       Email: csmartin@schwabe.com

       1420 5th Avenue, Suite 3400
       Seattle, WA 98101
       Phone: 206-622-1711
       Fax:    206-292-0460
       *Attorneys for Plaintiff*

COMPLAINT - 23

141152\292259\48567276.v2