THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPIC VIEW WATER AND SEWER DISTRICT,<br><br>    Plaintiff,<br><br>v.<br><br>EDMONDS SCHOOL DISTRICT NO. 15,<br><br>    Defendant. | No. 2:25-cv-01409-KKE<br><br>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: MONDAY, APRIL 13, 2026 |

## I.    INTRODUCTION

The Water District's response is another attempt to deflect and obscure a simple undisputed fact: the Water District and the School District entered into a contract requiring the Water District to mediate this type of dispute *before* it filed an action in court.  Notably, the Water District has not disputed that or any other of the very few material facts in its response to the School District's motion, making ripe for resolution on summary judgment the narrow issue of whether mediation is required. It is required, because the Water Services Agreement is intractably connected to the subject matter of this dispute; both turn on the School District's alleged duties under the nonendangerment standard. And while the Water District raises many facts in its response immaterial to the issue at hand—for example, alleging that there is an imminent risk to the water supply, which it asserts based on data that is mischaracterized, at best—none should sway this

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) –1

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Court from holding that mediation is a condition precedent to this lawsuit and must occur before this lawsuit can be re-filed.

## II.    UNDISPUTED FACTS

The Water District in its Response does not dispute the following three material facts:

*First,* that the Water District and the School District entered into the Water Service Agreement ("Agreement");

*Second,* that the Agreement contains a mediation clause covering any disputes "aris[ing] from or relat[ing] to this Agreement or the breach thereof";

*Third,* that no mediation occurred before the Water District filed this lawsuit.

With regard to whether this dispute arises from or relates to the Agreement, the Water District makes legal arguments while also detailing a list of immaterial grievances with the School District's actions with respect to an alleged water quality issue and its efforts to work with its regulator—the Department of Ecology—to resolve those issues. Dkt. 27 at 3-10.

The School District disagrees with many of the Water District's claims and allegations, many of which misrepresent and distort data and the parties' actions, but this Reply is an inappropriate forum to respond to those assertions given that the summary judgment standard focuses solely on *material* facts. *See* Fed. R. Civ. P. 56. The School District thus will not respond to a majority of the Water District's allegations because they are immaterial to the disposition of this motion, which seeks this Court's ruling only on whether this dispute "arises from or relates to" the Agreement, thus requiring mediation before a case may be filed.

## III.    ARGUMENT

**A.    This Dispute Falls Squarely Within the Scope of the Water Services Agreement, and Mediation Is Required.**

The Water District agrees that mediation may constitute a condition precedent to litigation as a matter of state law. Dkt. 27 at 11. And it also agrees that, in interpreting contractual provisions, Washington courts seek to ascertain the intent of parties based on the "objective manifestation of

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 2

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the parties in the written contract[.]" *Bellevue Square, LLC v. Whole Foods Mkt. Pac. Nw., Inc.*, 432 P.3d 426, 430 (Wash. App. 2018) (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005)). But in its attempt to avoid its contractual obligations, the Water District strains the clear language of the Agreement. The mediation clause states that parties will mediate before resorting to litigation "[i]f a dispute arises from or relates to this Agreement or the breach thereof[.]" Dkt. 26-1 at 4 (emphasis added). The Water District's arguments that that clause does not apply to this dispute fail as a matter of law, because the unambiguous language of the contract shows that the parties intended the Agreement to cover *all* disputes regarding water quality at the School—and this dispute is solely about water quality at the school. *See In re Estates of Wahl*, 664 P.2d 1250, 1252 (Wash. 1983) (where contract language is clear, intent may be ascertained from the language of the contract as a matter of law).

### 1. Disputes relating to water quality concerns are logically connected to the Agreement.

The Water District admits that the phrase used in the Agreement (i.e., "arising from or relating to") indicates a "broader dispute resolution provision than those that encompass only disputes 'arising' from an agreement." Dkt. 27 at 12; *McClure v. Davis Wright Tremaine*, 890 P.2d 466, 468 (Wash. 1995). Its arguments following that premise do not hold up.

For instance, it cites *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988) to stand for the proposition that forum selection clauses, in general, only apply when "resolution of the claims relates to interpretation of the contract." But reliance on that case is misplaced. *Manetti-Farrow* involved a contract with a forum selection that applied to any controversy "regarding interpretation or fulfillment" of the contract. *Id.* at 510. That language had a narrower scope than a clause at issue here, which covers any dispute "arising from or relating to" the content of the Agreement. *Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1086 (9th Cir. 2018) ("arising out of" and "relating to" clauses require substantially different analyses). Further, *Manetti-Farrow* specifically held that "[w]hether a forum selection clause

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 3

applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." 858 F.2d at 514. *Manetti-Farrow* is therefore not binding, or persuasive, because the question here is whether the lawsuit at hand *relates to* the Agreement, not whether the filing of the lawsuit constitutes a breach of the contract's terms. Subsequent Ninth Circuit precedent has interpreted the exact language at issue here and found it to apply more broadly than the narrow language in *Manetti-Farrow*.

More recently, in *Sun,* the Ninth Circuit explained that only forum-selection clauses pertaining to claims "arising out of" a particular agreement relate to the interpretation and performance of the contract itself. *Sun,* 901 F.3d at 1086. "By contrast, forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Id.* (internal citation omitted). For this reason, in contracts with "relating to" language, "[t]he dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.* In *Sun,* individuals alleged they were fraudulently persuaded into investing in a company via a Share Purchase Agreement, and the forum-selection clause in the contract was held enforceable when they brought a securities claim for fraud at a later date. *Id.* at 1085-86. Although the securities claim did not relate to interpretation of the contract—rather, it related to the conduct of the parties *prior* to entering the contract—the forum-selection clause still controlled because the Agreement contained broad "relating to" language, and the complaint was "logically connected to the parties' agreements[.]" *Id.* at 1087.

The Water District attempts to twist the holding in *Sun*, and the analogous holding in *McClure*, to support its contention that disputes are only "logically and causally related" to a contract when "they would not exist without the contract, but they do not arise from the contract because the duties themselves are not contractual." Dkt. 27 at 13. Neither *Sun* nor *McClure* contains such language; indeed, both affirm the broad scope of "relating to" language, and *McClure* finds that broad application of such language is consistent with "the 'strong public policy

REPLY ISO MOTION FOR SUMMARY JUDGMENT
(No. 2:25-cv-01409-KKE) – 4

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

. . . favoring the arbitration of disputes.'" 890 P.2d at 468 (quoting *ML Park Place v. Hedreen*, 862 P.2d 602, 608 (Wash. 1993)). The Water District has provided no other legal authority to support its narrow interpretation of the Agreement's contractual language—language that under *Sun* and *McClure* only requires that the dispute be "logically or causally connected" to the Agreement to be bound by conditions precedent contained therein.

Here, the Agreement is logically connected to the Water District's complaint because both are rooted in the Water District's attempt to require the School District to take preventative safety measures with regard to the School's stormwater management system. Specifically, the Complaint seeks injunctive relief requiring the School District to "comply with the SDWA as implemented by Washington's UIC program," Dkt. 1 at 22, which is exactly what the Agreement requires. There is virtually total overlap between the subject matter of the lawsuit and the Agreement, which easily meets the "related to" requirements in the Agreement's contractual language.

Finally, the Water District's argument that the mediation clause limits its own scope is nonsensical. First, the mediation clause clearly states that parties will mediate before resorting to litigation "[i]f a dispute arises from or relates to this Agreement <u>or</u> the breach thereof[.]" Dkt. 26-1 at 4 (emphasis added). Further, the Agreement states that only *following* mediation may "any unresolved controversy or claim arising from or relating to this Agreement, the interpretation or application *or* the breach thereof, [] be resolved through litigation." *Id.* Those clauses are all disjunctive, meaning that the parties were not requiring mediation only with respect to breach claims.

**2.      PFAS chemicals are within the scope of the Agreement.**

The Water District also attempts to narrow the scope of the Agreement by claiming that, because it did not explicitly contemplate PFAS in 2018, PFAS are outside the scope of the Agreement entirely. Paragraph III.B of the Agreement does require the School District to actively monitor a specific list of enumerated substances, and PFAS is not on that list. Dkt. 26-1 at 4. But the Agreement requires more than following only one of the three requirements in section III of

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 5

the Agreement. Rather, the contractual language requires the School District to maintain "strict compliance with *each and every* condition set forth" in section III of the Agreement. *Id.* (emphasis added). The language "each and every" clearly shows that each condition is an independent requirement imposed upon the School District, and one condition does not circumscribe or encompass any of the others. Of note, the Water District does not argue Paragraph III.A was an independent requirement, separate and apart from Paragraph III.B, nor could it because, as with Paragraph III.B and III.C, Paragraph III.A imposed an independent obligation on the School District.

Paragraph III.C of the Agreement requires the School District to meet the nonendangerment standard and other water quality rules imposed by the Department of Ecology. *Id.* The Agreement does not contain language that limits these rules to the version of the rules existing in 2018. Indeed, if the Department of Ecology's nonendangerment standard had been updated right after the Agreement was signed, the Water District surely would have argued that compliance with the updated standards was required by the Agreement.

The Water District argues that the Agreement "*only* makes sense if the parties understood that the *contractual* nonendangerment requirement imposed by Paragraph III.C was defined and circumscribed by the list of analytes that ESD was required to monitor under Paragraph III.B." Dkt. 27 at 14 (emphasis in original). But this interpretation does *not* make sense: among other things, Paragraph III.C requires the School District to meet "specific requirements for Class V wells set forth in WAC 173-218-090." Dkt. 26-1 at 4. That regulation imposes a number of design requirements that have nothing to do with the monitoring of the enumerated substances under Paragraph III.B. A more logical reading is that the Agreement settled upon a list of substances of particular concern for the School District to monitor in addition to it agreeing to abide by the nonendangerment standard. It is not reasonable to assume that the contract's broad incorporation of water quality regulations was intended to limit the nonendangerment standard to only those substances in Exhibit B to the Agreement.

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 6

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

The Agreement expresses a broad and non-specific concern that the School District should "implement additional measures to safeguard against contamination and to take reasonable measures to monitor the potential for adverse impacts to the drinking water supply[.]" *Id.* at 3. The Water District's concerns were related to contamination and adverse impacts to the drinking water supply *in general*—not merely for the list of substances in Exhibit B.

The Water District has provided no authority to support its expansive claim that "[i]t is a longstanding presumption in Washington law that contracts do not incorporate changes to the law after a contract is formed." Dkt. 27 at 15. It is true that "the general law in force at the time of the formation of the contract is a part thereof." *Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship*, 242 P.3d 1, 12 (Wash. App. 2010). It is also true that it is generally not appropriate to impose conditions onto a contract that are "not a part of the law of the country[.]" *Leiendecker v. Aetna Indem. Co.*, 101 P. 219, 219 (Wash. 1909). But neither *Cornish* nor *Leiendecker* speak to whether a contract requiring adherence to a certain law requires adherence to updated versions of that law. Far from a "longstanding presumption," the Water District has not provided any legal authority or evidence to support its argument. Further, its argument would result in an illogical practical conclusion: following its interpretation, the School District would be contractually required to follow the 2018 version of Ecology's water quality regulations in perpetuity or risk being in violation of the contract and losing its access to drinking water supply—*i.e.*, the School would have to follow the standards even if they were later found to be improper or ill-advised. It is much more reasonable to interpret the contract as requiring adherence to the water quality regulations as they evolve and change with time.

**B.     The Water District's Citizen Suit is Subject to the Agreement's Mediation Requirement.**

The Water District claims that following the contracted-for mediation clause would place impermissible hurdles on citizen suits, but that is not the case. The Supreme Court has held that "statutory claims may be the subject of an arbitration agreement" unless "Congress itself has

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 7

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The Water District attempts to distinguish itself from the plaintiffs in *Gilmer* by claiming that its posture is different since it is a "private attorney general" seeking compliance with federal law. Dkt. 27 at 18. But aside from one phrase in a case from the Western District of Louisiana, *see Hussey v. Total Env't Sols., Inc.,* No. 6:14-CV-2186, 2015 WL 7282073, at *2 (W.D. La. Nov. 16, 2015), the Water District gives no authority supporting this distinction, and there is none. Indeed, 42 U.S.C. § 300j-8, the basis for this lawsuit, specifies that "any person may commence a civil action **on his own behalf**" to enforce to requirements of the SDWA (emphasis added). The Water District is suing "on its own behalf" to attempt to enforce water quality standards. Similarly, the Water District on its own behalf contractually committed itself to engage in mediation with the School District before it seeks to enforce the Agreement's terms (which include compliance with the nonendangerment standard, the basis for its SDWA claim) in court. It should be held to that commitment.

The Water District similarly fails to identify any manifestation by Congress of an intent to preclude a waiver of a judicial forum. The fact that the SDWA gives the Water District the ability to pursue relief under 42 U.S.C. § 300j-8(e) does not show an intent to prevent parties from settling disputes through arbitration or mediation, or to require parties who contractually agreed to conduct arbitration or mediation to follow through on that promise. Further, the Agreement does not divest the Water District of a judicial forum; it merely requires a condition precedent—mediation—before bringing a case in court. Ultimately, the Water District has entirely failed to show *any* legislative history or statutory intent by Congress to prevent parties from resolving SDWA disputes outside of court. Absent that showing, the *Gilmer* presumption prevails.

Finally, the Water District overstates the potential harm of requiring it to abide by the terms of the Agreement. Doing so would not hold the Water District "hostage to open-ended dispute resolution clauses[.]" Dkt. 27 at 18-19. Nor would it somehow discourage individuals from

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 8

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

reporting violations to state regulators—a right the Water District has consistently exercised. *Id.* at 19. The Water District is entitled to be dissatisfied with the provisions of the contract it signed, but it cannot use that dissatisfaction to evade the clear intent of the Agreement—which is to require mediation prior initiating a lawsuit.

**C.      No Waiver Occurred as a Matter of Law.**

   **1.      The School District did not delay its attempt to seek mediation.**

Under Washington law, a party waives its contractual right to arbitration or mediation only when it acts inconsistently with that right. *Verbeek Props., LLC v. GreenCo Env't, In*c., 246 P.3d 205 (Wash. 2010); *see also Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc*., 621 P.2d 791, 793-94 (Wash. App. 1980). Because of a strong policy favoring alternative dispute resolution, waiver is not a favored defense to a motion seeking to compel arbitration or mediation. *See Schuster v. Prestige Senior Mgmt., L.L.C.*, 376 P.3d 412, 421 (Wash. 2016). The Water District points to several years of discussion between the parties as evidence that the School District waived its right to mediation. The argument fails for several reasons.

First, the School District was not obligated to assert its right to mediation until it knew that litigation was impending. Implied waiver of a right to arbitration or mediation can only occur *after* a lawsuit is initiated. *See Lake Wash. Sch. Dist.*, 621 P.2d at 794 (examples of waiver can include failure to assert arbitration clause when action is commenced or if not asserted as a ground for summary judgment). The long colloquy that the Water District (selectively and sometimes inaccurately) describes, even if taken at face value, does not constitute waiver of a right to mediate; rather, it represents the "direct discussions" contemplated by the Agreement before mediation is required and the ongoing relationship of entities who both have interests in the same community. Dkt. 26-1 at 5. Since direct discussions did not resolve the Water District's concerns, mediation was the next step in the process—not litigation. The Agreement contains no time period in which the parties must seek mediation, and the School District was not required to unilaterally initiate mediation when the Water District made no request to mediate (which, as the party with alleged

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 9

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

claims, would have been the proper entity to make such a request). Since the School District was not obligated to seek mediation prior to instigation of the lawsuit, the period of time during which the parties discussed the School District's stormwater management preceding the filing of this lawsuit is entirely irrelevant.

Second, the School District did not delay its assertion of its right to mediation once there was a concrete threat of litigation. The School District replied to the Water District's notice twenty-one days after learning of the Water District's intent to file this action, even though the SDWA provides a sixty-day waiting period. Dkt. 18-10. The parties were continuing to engage in discussions regarding the logistics of mediation when the Water District filed this action. Once the lawsuit was filed, the School District promptly filed a Motion to Dismiss on the issue of mediation, which has now been converted into this proceeding for summary judgment. *See* Dkt. 21.

The School District promptly invoked its right to mediate, and courts have repeatedly found that there is no implied waiver when such timely invocation occurs. In *Lake Washington,* a Washington court found that taking three months to invoke the right to arbitrate was not an implied waiver of a party's right to arbitration. 621 P.2d at 794. The court cited other cases in which longer delays also did not constitute waiver. *Id.* (citing *Geo. V. Nolte & Co. v. Pieler Constr. Co.*, 337 P.2d 710 (Wash. 1959) (5 months); *Hilti, Inc. v. Oldach*, 392 F.2d 368 (1st Cir. 1968) (2 years); *Lumbermens Mut. Cas. Co. v. Borden Co*., 268 F. Supp. 303 (S.D.N.Y. 1967) (2 years); *Babcock v. Sol Corp. of Maine*, 386 A.2d 1259 (N.H. 1978) (10 months)). The court noted that "a party to a lawsuit who claims the right to arbitration must take some action to enforce that right within a reasonable time after suit is filed." *Id.* That is exactly what happened here. The School District has been prompt and consistent in asserting its contractual right to mediation prior to litigation—miles away from either an express or implied waiver of that right.

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 10

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## 2.    The Water District did not endeavor to mediate to an extent that waives its contractual obligations.

The Water District has not provided any evidence to show that it requested, or sought to initiate, mediation prior to the instigation of this lawsuit—because it did not. Thus, the maximum amount of time the Water District can be found to have "endeavored" to mediate with the School District was from the first time mediation was requested—on June 11, 2025—to the date the case was filed—on July 25, 2025. A period of just over a month (during which, notably, the parties were attempting to agree on the logistics of hiring a mediator) is simply not sufficient to find that the mediation clause should be ignored. *See Lake Wash.*, 621 P.2d at 795.

The Water District argues that, because the Agreement does not provide a deadline by which mediation must be scheduled and completed, the School District should be penalized and found to have waived its contractual rights. Dkt. 27 at 23-24. That the contract does not provide a deadline by which mediation must be scheduled and completed is immaterial. Taking just over a month to respond to a notice of intent to sue and invoke the right to mediation is not unreasonable in the first place, and the terms of the Agreement are far from unconscionable. Nonetheless, this Court may "impose a reasonable time" for mediation if it wishes. *See Pepper & Tanner, Inc. v. Kedo, Inc.,* 535 P.2d 857, 859 (Wash. 1975). The School District is not opposed to this because it has consistently sought to mediate since the instigation of this lawsuit. It is an utter mischaracterization to claim that the School District is somehow inappropriately taking advantage of the very process that parties agreed upon when they signed the contract.

For these reasons, the Court should reject the Water District's suggestion that it find as a matter of law that the School District expressly or impliedly waived its contractual right to mediate when it (1) promptly requested mediation upon notification of an impending lawsuit, (2) engaged in good-faith discussions with the Water District to schedule mediation, and (3) promptly filed motions before this court to protect its right to mediation.

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 11

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**D.      Dismissal Without Prejudice is the Appropriate Remedy.**

The Water District's response correctly notes that this court has the power to stay proceedings, rather than dismiss. Dkt. 27 at 25. But the Water District does little to engage with the many cases where district courts *have* found dismissal to be an appropriate remedy when a party failed to mediate pursuant to a contract that makes mediation a condition precedent. For instance, in *Brosnan v. Dry Cleaning Station Inc.,* No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008), plaintiffs who failed to engage in required mediation prior to filing a lawsuit requested a stay of the matter rather than dismissal, but the court denied the request and dismissed the claim. The court noted that California law supported dismissal of lawsuits brought in violation of conditions precedent. *Id.*

Washington law has long recognized that when an agreement "provides for a method of resolving disputes that may arise between the parties, that method must be pursued *before* either party can resort to the courts for relief." *Abel v. City of Algona*, 156 Wash. App. 1047, 2010 WL 2671932 at *7 (Wash. App. 2010); *Tombs v. Nw. Airlines, Inc*., 516 P.2d 1028, 1031 (Wash. 1973) (citing *Jackson v. Walla Walla*, 226 P. 487 (Wash. 1924); *Thorgaard Plumbing & Heating Co. v. King County*, 426 P.2d 828 (Wash. 1967)). The purpose of such an agreement is often to avoid the "time consuming and costly machinery of the courts in lieu of the relative expedience" of alternative dispute resolution. *Tombs*, 516 P.2d at 1030 (quoting *Hanford Guards Local 21 v. General Elec. Co*., 358 P.2d 307 (Wash. 1961)).

Here, the School District has already been required to engage in time-consuming and costly motions practice over a dispute that was rightfully fit for mediation. Dismissing this lawsuit without prejudice to allow parties to seek mediation will ensure that parties meaningfully engage in the mediation process, rather than simply electing to resort back to litigation that was brought prematurely and in violation of the parties' contractual obligations. The dismissal, *without prejudice*, will remove the cloud of this litigation and permit the parties to concentrate on the

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 12

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

contracted-for mediation. District court precedent, Washington state law, and the context of this case support dismissal without prejudice rather than a stay while parties pursue mediation.

Dated: April 13, 2026

I certify that this memorandum contains 4,193 words, in compliance with the Local Civil Rules.

By: s/ *Meredith Weinberg*

Meredith R. Weinberg, Bar No. 45713
Juliana Lehua Bennington, Bar No. 60357
**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
MWeinberg@perkinscoie.com
JBennington@perkinscoie.com

*Attorneys for Defendant Edmonds School District No. 15*

REPLY ISO MOTION FOR SUMMARY
JUDGMENT
(No. 2:25-cv-01409-KKE) – 13