UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPIC VIEW WATER AND SEWER DISTRICT,<br>Plaintiff(s),<br>v.<br>EDMONDS SCHOOL DISTRICT NO. 15,<br>Defendant(s). | CASE NO. C25-1409-KKE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Olympic View Water and Sewer District ("Olympic View") filed this citizen suit under the Safe Drinking Water Act ("SDWA"), alleging that Defendant Edmonds School District No. 15 ("the School District") is violating the SDWA by discharging contaminated stormwater at Madrona K-8 School to underground sources of drinking water. Dkt. No. 1 ¶ 5.

The School District and Olympic View entered into a Water Service Connection Agreement ("the Agreement") in 2018, conditioning Olympic View's provision of water to Madrona K-8 School on the School District's compliance with specific environmental requirements intended to safeguard against contamination of the drinking water supply. Dkt. No. 26-1. This Agreement contains a clause requiring a mediation attempt before either party may file a lawsuit arising from or related to the Agreement. *See id*. § V.D.

Olympic View did not engage in mediation with the School District before filing this action, and the School District argues that this failure to comply with a condition precedent

warrants dismissal. Dkt. No. 24.[1] The Court finds that the dispute at issue in this lawsuit is independent of the Agreement, and does not arise from or relate to the Agreement. Because the mediation clause does not cover this dispute, the Court will deny the School District's motion and allow this action to proceed.

## I. BACKGROUND

Madrona K–8 School is a public school within the School District located in the mapped buffer zone of the Critical Aquifer Recharge Area for the Deer Creek Group A municipal water supply source. *See* Dkt. No. 1 ¶¶ 29–30. In 2016, the School District's board approved a construction project to replace the original school building with a new facility. *Id.* The construction project "included the installation of a new stormwater management system, which collects water at catch basins and then conveys this stormwater to bioretention planters, an oil water separator, or one of the 16 [underground injection control ("UIC")] Wells located at the site." *Id.* ¶ 31.

At the time that the construction project was proposed, Olympic View "vehemently opposed" the School District's decision to install UIC Wells at the school "because of the threat posed by discharging stormwater directly into the Deer Creek Drinking Water Aquifer." Dkt. No. 1 ¶ 34. Olympic View operates a municipal drinking water treatment plant that withdraws water from Deer Creek and conditioned its supply of drinking water to the school on the School District's "strict compliance" with every condition of the Agreement. Dkt. No. 26-1 § II. The Agreement requires that the School District comply with (1) a monitoring plan to test groundwater and stormwater for enumerated contaminants on a specified schedule, and (2) the conditions and requirements set by the Washington State Department of Ecology ("Ecology"), including the

[1] This order refers to documents filed on the docket by CM/ECF page number.

"nonendangerment standard" as defined by Washington Administrative Code ("WAC") § 173-218-080 and the applicable well requirements set forth in WAC § 173-218-090. *Id.* § III.A–C.

The Agreement also contains a "Mediation/Arbitration Clause" that reads as follows:

> If a dispute arises from or relates to [the Agreement] or the breach thereof and if the dispute cannot be resolved through direct discussions, the parties agree to endeavor first to settle the dispute in an amicable manner by mediation administrated by a mediator under [Judicial Arbitration and Mediation Services] rules before resorting to litigation. The mediator may be selected by agreement of the parties. Following mediation, or a written agreement of the parties to waive mediation, any unresolved controversy or claim arising from or relating to [the Agreement], the interpretation or application or breach thereof, shall be resolved through litigation. All fees and expenses for mediation shall be borne by the parties equally. However, each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of evidence.

Dkt. No. 26-1 § V.D.

The UIC Wells began operating when the Madrona K–8 construction project was completed in 2019. Dkt. No. 1 ¶ 37. In 2022, Olympic View sampled the stormwater at the school and testing showed that it contained PFAS contaminants;[2] this sampling was not required by the Agreement nor are PFAS compounds an enumerated contaminant that must be tested under the Agreement. Dkt. No. 26-3 at 3. The School District then contracted to do its own sampling and that sampling confirmed that stormwater at Madrona K–8 contained PFAS constituents, although the samples were not collected at the groundwater point of compliance as defined in the regulations. *Id.* at 4. Ecology contacted the School District in August 2024 to recommend "immediate corrective action" and stated that a PFAS-specific sampling and testing protocol may need to be created. *Id.* at 4–5.

[2] "PFAS" chemicals are Per- and Polyflouroalkyl Substances designated as contaminants by the U.S. Environmental Protection Agency. Dkt. No. 1 ¶ 2. "PFAS chemicals are water-soluble and highly mobile and can easily contaminate groundwater once deposited in soil or discharged in UIC wells. PFAS chemicals are linked to serious health concerns, including developmental effects in children, impacts on the immune system, and increased risks of certain cancers." *Id.* ¶ 6.

The School District conducted voluntary sampling and testing of stormwater at Madrona K-8 in December 2024, and reported its sampling and testing results to Ecology. *See* Dkt. No. 26-5. This testing revealed the presence of PFAS compounds, although the source of the contamination could not be identified at that time. *Id*. at 3, Dkt. No. 26-6 at 9. Ecology requested that the School District take additional corrective actions. Dkt. No. 26-5 at 5–6.

Believing that Ecology's proposed course of action was insufficient to ensure that the School District will not endanger the water supply, Olympic View informed the School District that its discharge of PFAS-contaminated stormwater violated and would continue to violate the SDWA and Washington's UIC Well program. Dkt. No. 26-6. As required by the SDWA, Olympic View provided a 60-day notice of its intent to file a SDWA citizen suit against the School District to the School District, Ecology, the Washington State Attorney General, and U.S. Environmental Protection Agency administrators. *Id.* After the 60-day notice period expired, Olympic View filed this lawsuit, bringing eight claims against the School District for violating the SDWA. Dkt. No. 1.

The School District moved to dismiss without prejudice, arguing that Olympic View's failure to mediate before suing warranted dismissal. Dkt. No. 8. Finding that the resolution of that motion would require consideration of material outside the pleadings, the Court converted the School District's motion to dismiss to a motion for summary judgment and provided leave to re-brief. Dkt. No. 21. The School District's summary judgment motion is now fully briefed and the Court will deny it for the following reasons.

## II. ANALYSIS

### A. Legal Standards

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden to show the absence of a genuine issue of material fact and that it is legally entitled to prevail. *Celotex*, 477 U.S. at 323. The court construes the evidence and draws "reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation modified). Courts may interpret an unambiguous contract at summary judgment "even if the parties dispute the legal effect of a certain provision." *Mayer v. Pierce Cnty. Med. Bureau, Inc.*, 909 P.2d 1323, 1326 (Wash. Ct. App. 1995) (quoting *Voorde Poorte v. Evans*, 832 P.2d 105, 107 (Wash. Ct. App. 1992)).

In interpreting contracts, Washington courts focus "on the objective manifestations of the agreement" and seek to ascertain the intent of the parties from "the reasonable meaning of the words used." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). The court will give contract language "its ordinary and common use" and will not construe a term "so as to defeat its plain and obvious meaning." *Mains Farm Homeowners Ass'n v. Worthington*, 854 P.2d 1072, 1074–75 (Wash. 1993). If the court can determine the parties' intent "from the actual words used" in the contract, the parties' "subjective intent … is generally irrelevant[.]" *Hearst Commc'ns*, 115 P.3d at 267.

### B. Mediation Is a Condition Precedent to Litigation For Disputes "Arising From or Relating To" the Agreement, but Olympic View's Claims Do Not Arise From or Relate to the Agreement.

The parties agree that the Agreement requires them to attempt to mediate any dispute arising from or related to the Agreement, but disagree as to whether this dispute falls within that definition.

Courts have explained how to determine the broad, but not unlimited, boundaries of disputes "arising from and related to" a contract. In *McClure v. Davis Wright Tremaine*, the

Washington State Court of Appeals found that "[a]n arbitration clause which encompasses any controversy 'relating to' a contract is broader than language covering only claims 'arising out' of a contract." 890 P.2d 466, 467 (Wash. Ct. App. 1995). The Ninth Circuit has explained that a forum-selection clause that covers disputes "related to" a contract "applies to any dispute that has some logical or causal connection to the parties' agreement[,]" but "need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). To determine whether a dispute falls within a contractual provision, the court "must examine the factual allegations raised to determine" which claims are covered. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). The factual allegations in a claim must "at least touch matters covered by the contract" to be "related to" a contract. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023). And where a defendant could have engaged in the same conduct without a contractual or employment relationship to the plaintiff, and the plaintiff could have brought the same claims against the defendant in the absence of that relationship, then a plaintiff's claims do not "relate to" its contractual or employment relationship with defendant. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017).

Here, the Court agrees with Olympic View that its claims against the School District fall outside the mediation clause of the Agreement. First, they bear no logical or causal connection to the Agreement. The complaint does not reference the Agreement or assume its existence, and Olympic View does not link any of its claims to the Agreement or any breach thereof. *See* Dkt. No. 1. There is a superficial connection in that the Agreement and the complaint reference the UIC Wells at Madrona K-8 and their impact on the drinking water supply, but that connection does not extend to the nature of the claims. Rather, the claims pertain to contaminants not listed in the Agreement and do not seek to enforce the School District's obligations under the Agreement. The

Court thus rejects the School District's characterization of the subject matter of the lawsuit having "virtually total overlap" with the Agreement. Dkt. No. 29 at 5. Olympic View's complaint addresses violations of the SDWA, and asserts that even if the School District complied with Ecology's requirements (consistent with the Agreement), the School District would nonetheless violate the SDWA. *See* Dkt. No. 1 ¶¶ 44–45. The Agreement addresses specific obligations that the School District agreed to abide by to secure access to Olympic View's water supply when Madrona K-8 was built, but—contrary to the School District's briefing (Dkt. No. 29 at 3 ("[T]he parties intended the Agreement to cover *all* disputes regarding water quality at the School"))—it does not constitute the sum of the School District's drinking water-related obligations. *See* Dkt. No. 26-1 § II ("[Olympic View] agrees to supply the necessary connections to its public drinking water supply for the Madrona School for domestic water and fire flow subject to strict compliance with each and every condition set forth in [§] III below."). The Court thus reads Olympic View's complaint as relating to conduct outside the scope of the Agreement.

In this way, Olympic View's claims are in fact wholly independent of the Agreement: the School District could still be subject to SDWA liability even in the absence of the Agreement, and Olympic View or other impacted parties would be entitled to bring the same citizen suit against the School District in the absence of a contractual relationship. Although the School District argues (Dkt. No. 29 at 5–6) that the Agreement requires it to comply with rules imposed by Ecology, including those that did not exist at the time that the Agreement was executed, Olympic View frames its claims differently. Olympic View contends that neither the School District *nor* Ecology has gone far enough in preventing contamination of the drinking water supply, and that even if the School District complied with Ecology's requirements, it would nonetheless violate the SDWA. Dkt. No. 1 ¶¶ 44–45. Because the Court finds that Olympic View's claims allege violations of the SDWA based on contaminants not enumerated in the Agreement, and seek to

hold the School District liable under the SDWA rather than the Agreement, Olympic View's claims do not arise from or relate to the Agreement. The Agreement's mediation clause therefore does not apply, and does not impede the progress of this action.

## III. CONCLUSION

For these reasons, the Court DENIES Defendant's motion for summary judgment. Dkt. No. 24. The courtroom deputy shall issue an order setting early case deadlines.

Dated this 31st day of August, 2026.

Kymberly K. Evanson
United States District Judge